WHATLEY DRAKE & KALLAS, LLC
Joe R. Whatley, Jr., Esq.
Edith M. Kallas, Esq.
1540 Broadway, 37th Floor
New York, NY 10036
Tel: (212) 447-7070
FAX: (212) 447-7077

Thomas J. Butler, Esq.
2001 Park Place North, Suite 1000
Birmingham, Alabama 35203
Tel: (205) 328-9576
FAX: (205) 328-9669

EMERSON POYNTER LLP
John G. Emerson, Esq.
830 Apollo Lane
Houston, Texas  77058-2610
Tel: (281) 488-8854
FAX: (281) 488-8867

JIGARJIAN LAW OFFICE
Robert A. Jigarjian, Esq. (CA Bar No. 171107)
128 Tunstead Avenue
San Anselmo, California 94960
Tel: (415) 341-6660
FAX: (501) 907-2556
jigarjianlaw@gmail.com

[ADDITIONAL COUNSEL ON SIGNATURE PAGE]

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

CV08-07367  GAF (MANx)

| | |
|---|---|
| 1   **LINDSEY WEBB, individually and on behalf of all others similarly** | |
| 2   **situated,** | Case No. |
| 3   **Plaintiffs,** | **CLASS ACTION** |
| 4   **v.** | **COMPLAINT FOR VIOLATION OF BUS. & PROF. CODE SECTIONS** |
| 5   **CARTER'S, INC.,** | **17500 ET SEQ. & 17200 ET SEQ.,** |
| 6   **Defendant.** | **BREACH OF WARRANTY, STRICT PRODUCTS LIABILITY,** |
| 7 | **INTENTIONAL AND NEGLIGENT MISREPRESENTAION,** |
| 8 | **NEGLIGENCE AND NEGLIGENCE** |
| 9 | **PER SE, UNJUST ENRICHMENT, SUPPRESSION, VIOLATION OF** |
| 10 | **MAGNUSON-MOSS WARRANT** |
| 11 | **ACT & INJUNCTIVE AND DECLARATORY RELIEF** |
| 12 | |
| 13 | **DEMAND FOR JURY TRIAL** |

14

15

16       Plaintiff Lindsey Webb ("Plaintiff"), individually and on behalf of all other

17 persons similarly situated, files this Class Action Complaint (the "Complaint") and

18 alleges upon personal knowledge, matters pertaining to herself and her own acts,

19

20 and as to all other matters, upon information and belief, based upon the

21 investigation undertaken by Plaintiff's counsel:

22

23 **I.**<br>**INTRODUCTION**

24

25     1.     This is a nationwide class action lawsuit brought on behalf of Plaintiff

26 and other similarly situated individuals (the "Plaintiff" and the "Plaintiff Class")

27 against Carter's Inc. ("Defendant" or "Carter's"). Jurisdiction is based on 18

28 U.S.C. §1332(d). Plaintiff brings this action pursuant to Rule 23 of the Federal

Rules of Civil Procedure to redress Carter's deceptive, misleading and untrue advertising and unlawful, unfair and fraudulent business acts and practices related to its apparel products containing heat-transferred or "tag less" labels ("defective apparel"), which conduct misled the public into believing the defective apparel was safe, did not contain harmful skin irritants, and were suitable for their intended purpose.

2.    Carter's Inc. and its wholly owned subsidiaries (collectively "Carter's" or "the Company") design, source, and market branded children's wear under the *Carter's*, *Child of Mine*, *Just One Year*, *OshKosh*, and related brands.    The Company reports that its products are sourced through contractual arrangements with manufacturers worldwide for wholesale distribution to major retailers, including the mass channel retailers like Babies R Us, and to several hundred of its Carter's and OshKosh retail stores.

3.    Under its Carter's brand, the Company designs, sources and markets an array of products, primarily for sizes newborn to seven.   Carter's brand baby products include bodysuits, undershirts, towels, washcloths, receiving blankets, layette gowns, bibs, caps and booties. Carter's sells a range of baby products for newborns, primarily made of cotton. Carter's brand sleepwear products include pajamas, cotton long underwear and blanket sleepers in sizes 12 months to size seven.   Carter's describes itself on its website, www.Carters.com, as "the largest brand of baby and young children's apparel."

4.     At all relevant times, Carter's actively misrepresented the safety of its defective apparel and negligently designed, manufactured, marketed, advertised, promoted sold and/or distributed them as, *inter alia*, "snuggly, cuddly, day to day essential that make life easier for baby and mom," "super comfy," "oh-so-comfy for baby," "comfy" and "soft & comfortable."  Many of the labels prominently state "made with love."

5.     At all relevant times, Carter's failed to warn of the dangers of the defective apparel including, but not limited to, the fact its apparel products containing heat-transferred or "tag less" labels contain chemicals and/or other adulterants that cause severe skin reactions.

6.     At all relevant times, Carter's knew, had reason to know, or should have known, that its apparel products containing heat-transferred or "tag less" labels were defective thereby defrauding Plaintiff, members of the Plaintiff Class, and the population-at-large.

7.     At all relevant times, Carter's knew, had reason to know, or should have known, that its representations that its apparel products containing heat-transferred or "tag less" labels were, *inter alia*, "snuggly, cuddly, day to day essential that make life easier for baby and mom," "super comfy," "oh-so-comfy for baby," "comfy" and "soft & comfortable" were materially false and misleading.

8.     Due to the defective nature of Carter's apparel products containing heat-transferred or "tag less" labels, consumers have an increased risk of

purchasing apparel products that will cause their children to suffer severe skin reactions. Carter's knew, had reason to know, or should have known of the defective nature of its apparel products containing heat-transferred or "tag less" labels and the resulting risk of injuries, but failed to warn Plaintiff and all other Plaintiff Class members, preventing Plaintiff and Plaintiff Class members from making informed choices about the selection of apparel products containing heat-transferred or "tag less" labels.

9.      Upon information and belief, Carter's concealed its knowledge of the defects in its apparel products containing heat-transferred or "tag less" labels.

10.      Consequently, Plaintiff and all Plaintiff Class members seek compensatory and punitive damages as a result of their purchase and/or use of the defective apparel which caused may cause and/or continue to cause Plaintiff and the Plaintiff Class members to suffer economic loss and other expenses.

11.      Further, Plaintiff and all Plaintiff Class members seek equitable and other relief for themselves, and all others similarly situated, to compensate them, in whole or in part, for the economic issues which confront them as a result of their reliance upon the safety of its Carter's apparel products containing heat-transferred or "tag less" labels including disgorgement, return of any purchase price paid, interest on these amounts from the date of purchase, attorneys' fees and costs, non-pecuniary damages, as well as any other legal or equitable relief to which Plaintiff may be entitled and whatever further relief the Court deems just and proper under

1    the circumstances.

2    ## II.
3    ## PARTIES

4        12.    Plaintiff Lindsey Webb is an individual consumer who, at all times
5
6    material hereto, was and is a resident of the County of Los Angeles in the State of
7    California, and a "citizen" of California.

8        13.    Defendant Carter's Inc. is a corporation organized and existing under
9
10   the laws of the State of Delaware with its principal executive offices located in The
11   Proscenium, 1170 Peachtree Street NE, Suite 900, Atlanta, Georgia 30309. For the
12
13   purposes of diversity jurisdiction, Defendant may be considered a "citizen" of
14   either the State of Delaware or the State of Georgia.   At all relevant times,
15   Defendant was and is doing business within this Judicial District.

16       14.    Plaintiff is informed and believes, and thereon alleges, that at all times
17
18   herein mentioned, that the employees of Defendant, its subsidiaries, affiliates and
19   other related entities, were the agents, servants and employees of Defendant, and at
20
21   all times herein mentioned, each was acting within the purpose and scope of said
22   agency and employment. Whenever reference in this Complaint is made to any act
23   or transaction of Defendant, such allegation shall be deemed to mean that the
24
25   principals, officers, directors, employees, agents, and/or representatives of
26   Defendant committed, knew of, performed, authorized, ratified and/or directed such
27   act or transaction on behalf of said Defendant while actively engaged in the scope
28   of their duties.

### III.
### JURISDICTION AND VENUE

15.    This court has jurisdiction over this class action under 18 U.S.C. §1332(d), which under the provisions of the Class Action Fairness Act ("CAFA") explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000, exclusive of interest and costs. Plaintiff alleges that the total claims of individual class members in this action are well in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5).  The Plaintiff is a citizen of California. whereas, as set forth above, Defendant is a citizen of either Georgia or Delaware.  Furthermore, Plaintiff alleges that more than two-thirds of all of the members of the proposed Plaintiff Class in the aggregate are citizens of a State other than California, where this action is originally being filed, and that the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B). Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A).

16.    Venue is proper in this district under 28 U.S.C. §1391.  Defendant Carter's markets and sales apparel for babies and young children in this district and has availed itself to the laws and protection of the State of California.  Additionally, Plaintiff purchased Carter's apparel within this District.

# IV.
## FACTUAL BACKGROUND

**A.**   <u>**Children Are More Susceptible To Chemical Toxicity Than Are Adults**</u>

17.   The fact that children are more susceptible to chemical toxicity than adults is widely recognized.

18.   The National Academy of Sciences published a report in 1993 titled "Pesticides in the Diets of Infants and Children" ("NAS Report"). NAS explained that children are not little adults with respect to potential chemical toxicities:

> "A fundamental maxim of pediatric medicine is that children are not 'little adults.' **Profound differences exist between children and adults.** Infants and children are growing and developing. Their metabolic rates are more rapid than those of adults. There are differences in their ability to activate, detoxify, and excrete xenobiotic compounds. All these differences can affect the toxicity of pesticides in infants and children, and for these reasons the toxicity of pesticides is frequently different in children and adults [....]

(NAS Report, at 3-4) (emphasis added).

19.   The Natural Resources Defense Council ("NRDC") issued a report in 1997 titled "Our Children At Risk; The 5 Worst Environmental Threats To Their Health." NRDC explained that children are relatively more susceptible to potential chemical toxicities:

> "Pound for pound, children breathe more air, drink more water, and consumer more food than adults. **This higher rate of intake means that children will receive higher doses of whatever contaminants are present** in the air, water, or food. In addition, **infants have a relatively greater surface area of skin than adults, thereby increasing their potential dermal absorption of certain compounds**.... A typical newborn weighs one-twentieth of the weight of an adult male, but the infant's surface area is one-eighth as great.

> Therefore, the total area of skin that could be exposed to a chemical...is two and a half times as great per unit of body weight in the infant as in the adult."

(NRDC Report, Ch. 2) (citing  International Programme on Chemical Safety, Principles for Evaluating Health Risks From Chemicals During Infancy and Early Childhood: The Need for a Special Approach, Environmental Health Criteria 59, World Health Organization, 1986) (emphasis added).

20.    The United States Environmental Protection Agency ("EPA") issued its "Supplemental Guidance for Assessing Susceptibility from Early-Life Exposure to Carcinogens," ("EPA Supplemental Guidance") in early 2005.  EPA recognized that toxicokinetic and toxicodynamic differences between children and adults are greatest during the first two years of life.  (EPA Supplemental Guidance, at 32) (citations omitted).

21.    Later in 2005, the Intergovernmental Forum on Chemical Safety's ("IFCS") Children and Chemical Safety Working Group published a report titled "Chemical Safety and Children's Health; Protection the world's children from harmful chemical exposures:  a global guide to resources" ("2005 IFCS Report"). IFCS concluded that children are uniquely prone to harmful chemical exposures and their adverse health effects because:

- "Children's **exposure begins at conception**, as chemicals in a pregnant woman's body cross the placenta and affect the embryo or fetus during critical periods of development.  Some chemicals also accumulate in breast milk, compromising (though not negating) the benefits of this important food for infants.

- "Even after birth, children's **bodies remain immature**, with underdeveloped detoxification mechanisms to protect them from chemicals.
- "Their **brains and other organ systems are constantly developing**, undergoing periods of particular sensitivity to damage or disruption.
- "Compared with adults, children **breathe faster and eat and drink more** in proportion to their bodyweight, resulting in greater exposure to chemicals in air , food, and water.
- "Children **spend more time outdoors**, and often play on the ground or the floor, where chemicals such as pesticides and heavy metals are present.   In addition, young children frequently **place their hands or other objects in their mouths**, making ingestion of chemicals more likely.
- "Pregnant women and young children are often at higher risk of **inhaling or coming into contact with chemicals used indoors**, such as cleaning solutions, paints, cosmetics, and other household and consumer products.
- "Children are **less aware of potential chemical risks around them**, and are therefore less likely to avoid harmful exposures."

(2005 IFCS Report, at 3) (emphasis in original) (footnote omitted).

22.    Environmental Working Group ("EWG"), a nonprofit environmental research organization whose organizational goals include to "protect the most vulnerable segments of the human population—children, babies, and infants in the womb—from health problems attributed to a wide array of toxic contaminants," also explains that babies are more susceptible to effects from chemical toxins than are adults:

"Consider the skin.   Studies confirm what any parent knows:   an infant's skin is soft and delicate (Fluhr 2000; Giusti 2001).   Infant skin is also considerably thinner than adult skin; in fact, the thickness of children's skin increases linearly with age, typically reaching a maximum at age 20 (Tan 1982).   The thin skin of a newborn may well be more permeable to specific chemicals than the skin of an adult. Compounding this fact, **the surface area of a child's skin relative to**

**body weight is greater than adults, such that the potential dose of a chemical following dermal exposure is likely to be about 3 times greater in infants than in adults** (West 1981; Clewell 2002).

"Babies and children thus receive far greater exposures than adults to ingredients in personal care products slathered on their skin. Sensitivity to many chemicals in children's care products causes eczema (Katelaris 2006), and may produce more subtle damage later in life. Exposures to industrial chemicals may prime children for adult diseases (NAS 1993; EPA 2005), just as a few severe sunburns during childhood doubles the likelihood of developing malignant melanoma later in life (Oliveria 2006)."

(EWG, "Children Are Vulnerable") (emphasis added).

**B.    Carter's History of Consumer Product Recalls**

23.    Carter's has a history of consumer product recalls.

24.    For example:

a.   In April 2005, Carter's announced the recall of Carter's Brand Children's overalls;

b.   In June 2004, Samara Brothers Inc. announced the recall of children's swimsuit cover-ups sold under the brand names of Samara and Carter's;

c.   In January 2001, Carter's announced the recall of Infant Jumpsuits;

d.   In August 2000, Carter's recalled girl's nightshirts; and

e.   In March 1997, Gold Bug of Denver, Colorado recalled Carter's infant carriers.

//

**C.   Carter's "Tag less" labels**

25.    Upon information and belief, tag less labeling was initiated to allow for increased consumer comfort, branding opportunities, cost savings and security management.

26.    Typically, the tag less label process involves the application of a tag which is applied to a garment from a roll or cut single transfer in the presence of heat and pressure.

27.    One process for applying the labels to a garment is the heat transfer process, whereby ink printed on an adhesive film is "heat-pressed" onto the fabric garment surface.   Another process is where a heat seal is created by printing on a film/paper surface, a substrate, which in turn is heat placed onto the garment.

28.    Upon information and belief, Carter's tag less labels are applied to the inside of its baby apparel in lieu of traditional hanging tags.

**D.   Carter's Advertising of Baby Apparel**

29.    Like many businesses, Carter's uses, *inter alia,* the Internet to advertise its products.

30.    For example, on its website, Carter's states:

Carter's baby

Babies giggle, squirm, kick and wiggle so getting dressed can be quite a challenge.   New parents want clothing that makes dressing simple and quick.   Babies want clothing that is supersoft and comfy.   Carter's is the expert for cuddly and snuggly.

* * *

Newborn

Snuggly, cuddly, day to day essentials that make life easier for baby and mom.

* * *

Infant

Supercomfy pj's and playclothes for sleepytime or just playing around.

31.     Other marketing-related representations made by Carter's include:

     a.     "We provide trusted products that are super comfy, easy care, adorable and don't break the bank."

     b.     "The world is a challenging place, not just for babies and toddlers, but for    moms and dads too.  That's why we create products that solve problems and make life simpler. We make it easy for our customers to find what they need with smart store design and clear packaging."

     c.     Providing trusted products and services. Keeping life simple for our customers. Making solutions for real life. Continually inventing fresh ideas. Creating a truly warm experience.

**E.     CPSC and Carter's "Advisory" and Resulting Private Recall**

32.     Upon information and belief, many consumers, including Plaintiff Webb, who have clothed their babies in Carter's apparel have seen their children suffer severe skin damage in the area where the tag less label contacts the skin.

33.   On October 24, 2008, the U.S. Consumer Product Safety Commission (CPSC) and Carter's issued the following advisory:

> The U.S. Consumer Product Safety Commission (CPSC) and Carter's, Inc., of Atlanta, Georgia, are advising parents and caregivers that they have received reports that a small percentage of babies and infants have developed rashes on the upper back after wearing Carter's clothing with heat-transferred, or "tag-less," labels.
>
> This advisory applies to Carter's Fall 2007 product line. The Fall 2007 line utilizes a label on the inside back of the garment that has a raised surface with a solid, rather than a stenciled, background. This advisory does not apply to previous and current product lines, which utilize labels with stenciled backgrounds.
>
> The garments, which were made in various countries, were sold at Carter's own retail stores and at department and national chain stores.
>
> If your child develops a rash on the upper back after wearing garments that have a "tag-less" label with a solid background, you should stop using these garments. If the rash persists or worsens, you should contact your pediatrician. For additional information, visit Carter's website at http://www.carters.com/corporate/tagless_message.aspx, contact Carter's toll free at 1-888-282-4674 or by email at contactus@carters.com.

34.   Carter's has essentially created a private recall for the defective clothing if Class Members manage to learn of the recall and manage to run the gauntlet of conditions Carter's has imposed before providing potentially limited and inadequate relief.

**F.     Carter's Deceptive and Negligent Practices**

35.    Defendant negligently designed, manufactured, marketed, advertised, promoted, sold and/or distributed apparel products containing heat-transferred or "tag less" labels which were unreasonably dangerous in normal use.

36.    Defendant represents on its website that its apparel products are "snuggly, cuddly, day to day essential that make life easier for baby and mom," "super comfy," "oh-so-comfy for baby," "comfy" and "soft & comfortable."

37.    Plaintiff is conscientious about her child's apparel and fully intended to purchase Carter's apparel products that were safe, soft and comfortable.  She has purchased the defective apparel at stores in California and placed her child in them.  Upon wearing the defective apparel, Plaintiff's child suffered an adverse skin reaction in the area where the heat-transferred or "tag less" label came into contact with her skin.

38.    As a result of Defendant's deceptive labeling and marketing scheme and her reliance on the purported quality of Carter's products, Plaintiff was misled into purchasing the defective apparel.  As sold, the defective apparel does not provide the quality and comfort Plaintiff sought and thought she was receiving.  As a result, Plaintiff bought Carter's apparel products containing heat-transferred or "tag less" labels that she would not have purchased had she known otherwise.

39.    Defendant failed to adequately warn purchasers of the unreasonably dangerous characteristics associated with its defective apparel.

40.     Defendant owed a legal duty to Plaintiff and Plaintiff Class Members to design, manufacture, market, advertise, promote, distribute and sell its apparel products containing heat-transferred or "tag less" labels without hidden and concealed defects.

41.     Defendant breached such duty which proximately caused Plaintiff's and Plaintiff Class Members' damages.

42.     Defendant knew or, in the exercise of reasonable care, should have known that its apparel products containing heat-transferred or "tag less" labels were defective and that Plaintiff and Plaintiff Class Members might have reasonably been expected to purchase and/or use the defective apparel and be affected by its defective condition.

43.     This defective condition is a direct and proximate cause of Plaintiff's and Plaintiff Class Members' economic injuries.

## V.
## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this class action claim pursuant to Rule 23 of the Federal Rules of Civil Procedure.   The requirements of Rule 23 are met with respect to the classes defined below.

A.     **The Plaintiff Class.**

45.     Plaintiff brings her claim on her own behalf, and on behalf of the following class:

All persons in the United States who purchased apparel products containing heat-transferred or "tag less" labels that were produced, designed, marketed, advertised, promoted, manufactured, distributed and/or sold by Carter's Inc. and who were accordingly damaged thereby.

46.     Plaintiff reserves the right to amend or modify her Complaint and/or the Plaintiff Class definition in connection with meaningful discovery and/or a Motion for Class Certification.

47.     Members of the Plaintiff Class are so numerous and geographically dispersed that joinder of all Class members is impracticable.  The Plaintiff Class, upon information and belief, includes thousands if not hundreds of thousands of individuals geographically dispersed throughout the United States.   The precise number and identities of Class members are unknown to Plaintiff but can be easily obtained through notice and discovery.  Indeed, notice can be provided through a variety of means including publication, the cost of which is properly imposed upon the Defendant.

48.     Plaintiff will fairly and adequately protect the interests of all Plaintiff Class members and has retained counsel competent and experienced in class and consumer litigation.

49.     Plaintiff's claims are typical of the claims of the Plaintiff Class and all Plaintiff Class members sustained uniform damages arising out of the conduct challenged in this action.  The Plaintiff Class is ascertainable and there is a well-defined community of interests in the questions of law and/or fact alleged since the rights of each Plaintiff Class member were infringed or violated in a similar fashion

based upon the Defendant's wrongdoing.  The injuries sustained by the Plaintiff and the Plaintiff Class members flow, in each instance, from a common nucleus of operative facts – the Defendant's wrongdoing.  In every related case, Plaintiff and the Plaintiff Class members suffered uniform damages caused by their purchase of heat-transferred or "tag less" labels products produced, manufactured, distributed and/or sold by the Defendant.

50.     There are questions of law and fact common to the Plaintiff Class that predominate over any questions solely affecting individual Plaintiff Class members. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff and the Plaintiff Class members.   Individual questions, if any, pale by comparison to the numerous common questions that predominate.

51.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Plaintiff Class members is impracticable. Furthermore, the expense and burden of individual litigation make it impossible for the Plaintiff Class members to individually redress the wrongs done to them.

52.     Defendant has acted or have refused to act on grounds generally applicable to the Plaintiff Class thereby making it appropriate to grant final declaratory and injunctive relief with respect to the Plaintiff Class as a whole.

## COUNT I:  STRICT PRODUCTS LIABILITY –
## DEFECT IN DESIGN OR MANUFACTURE

53.     Plaintiff incorporates by reference all of the foregoing paragraphs as if set forth herein.

54.     Defendant, as commercial suppliers of apparel products containing heat-transferred or "tag less" labels, have an absolute duty to refrain from placing into the stream of commerce an unreasonably dangerous product that is not fit for consumption or use which can cause injury to person or property.

55.     Defendant breached that duty (and continues to breach that duty) by placing into the stream of commerce unreasonably dangerous products that are not fit for consumption or use which have caused injury to both persons and property. These products are unreasonably dangerous because they contain manufacturing and/or design defects that cause severe skin reactions.

56.     The unreasonably dangerous products Defendant placed into the stream of commerce reached consumers such as Plaintiff and the Plaintiff Class members without substantial change in the condition in which they were was supplied.

57.     Plaintiff and the Plaintiff Class members were reasonably foreseeable purchasers and/or users of Defendant's unreasonably dangerous products and purchased and/or used these unreasonably dangerous products in a foreseeable manner.  As a result, they have suffered significant damages caused directly and proximately by their use of Defendant's unreasonably dangerous products.

58.   Accordingly, Plaintiff and the Plaintiff Class are entitled to judgment against the Defendant for their actual damages in the form of restitution, attorneys' fees and costs of litigation.

## COUNT II: STRICT PRODUCTS LIABILITY – FAILURE TO WARN

59.   Plaintiff incorporates by reference all of the foregoing paragraphs as if set forth herein.

60.   Defendant has placed into the stream of commerce unreasonably dangerous products that are not fit for consumption or use and which can cause injury to person or property.

61.   Simultaneously, Defendant has also failed to warn the reasonably foreseeable purchasers and/or users of their products, including Plaintiff and the Plaintiff Class members, of the known dangers associated with their unreasonably dangerous products despite the fact that Defendant knew, or should have known, of the known dangers associated with their unreasonably dangerous apparel products containing heat-transferred or "tag less" labels.  Even after Defendant became, or should have become, aware of the dangerous condition of their apparel products containing heat-transferred or "tag less" labels, they still refused to investigate potential problems in a reasonable manner and failed to warn consumers of these potential problems thereby allowing countless other consumers to purchase the unreasonably dangerous products.

62.   As a direct and proximate result of Defendant's actions, Plaintiff and

1   the Plaintiff Class members have suffered significant damages.

2   63.   Accordingly, Plaintiff and the Plaintiff Class are entitled to judgment

3
4   against the Defendant for their actual damages in the form of restitution, attorneys'

5   fees and costs of litigation.

6
7   **COUNT III: BUSINESS AND PROFESSIONS CODE §17500, *ET SEQ*.**

8   **(MISLEADING AND DECEPTIVE ADVERTISING)**

9   64.   Plaintiff repeats each and every allegation contained in the paragraphs

10
11   above and incorporates such allegations by reference herein.

12   65.   Plaintiff asserts this cause of action for violations of California

13   Business and Professions Code §17500, *et seq*. for misleading and deceptive

14
15   advertising against Carter's.

16   66.   At all material times, Carter's has offered its apparel products

17   containing heat-transferred or "tag less" labels by way of, *inter alia*, the Internet,

18
19   product packaging, commercial advertisements and other promotional materials.

20   These materials uniformly misrepresented the nature and quality of the defective

21   apparel.   Said advertisements, inducements and materials come within the

22
23   definition of advertising as contained in Business and Professions Code §17500, *et*

24   *seq*. in that such promotional materials are intended as inducements to purchase

25   apparel products containing heat-transferred or "tag less" labels and are statements

26
27   disseminated by Carter's to Plaintiff and the Class or intended to reach members of

28

the Class.  Carter's knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive for the reasons set forth above.

67.    Carter's has prepared and distributed within the State of California via the Internet, labeling, product packaging, commercial advertisements and other promotional materials, statements that falsely advertise the nature and quality of its apparel products containing heat-transferred or "tag less" labels.   Consumers, including Plaintiff and the Class, are among the intended targets of such representations.

68.    The above acts of Carter's, in disseminating said misleading and deceptive statements to consumers, including Plaintiff and members of the Class, were or are likely to deceive Plaintiff and other members of the Class by misrepresenting and failing to disclose material facts regarding the nature and quality of its apparel products containing heat-transferred or "tag less" labels, all in violation of the "misleading prong" of California Business and Professions Code §17500.

69.    As a result of the above violations of the misleading prong of Business and Professions Code §17500, *et seq.*, Plaintiff and Class members have lost money or property as set forth above, and Carter's has been unjustly enriched at the expense of Plaintiff and the other members of the Class. Plaintiff and the Class, pursuant to Business and Professions Code §17535, are entitled to an order of this Court enjoining such future conduct on the part of Carter's, and such other orders

and judgments that may be necessary to provide for complete equitable monetary relief by disgorging Carter's ill-gotten gains and/or restoring to any person in interest some or all of the money paid for Carter's apparel products containing heat-transferred or "tag less" labels as a result of Carter's wrongful conduct, including the monies Carter's saved as a result of its wrongful acts and practices detailed herein.

70.     WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT IV:  BUSINESS AND PROFESSIONS CODE §17500, *ET SEQ*.**

**(UNTRUE ADVERTISING)**

71.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference therein.

72.     Plaintiff asserts this cause of action for violations of California Business and Professions Code §17500, *et seq*. for untrue advertising against Carter's.

73.     At all material times, Carter's has offered for sale apparel products containing heat-transferred or "tag less" labels to Plaintiff and other members of the Class by the use of, *inter alia*, the Internet, product packaging, commercial advertisements and other promotional materials.  These materials misrepresented the nature and quality of its apparel products containing heat-transferred or "tag less" labels.  Said advertisements and inducements come within the definition of advertising as contained in Business and Professions Code §17500, *et seq*. in that

such promotional materials are intended as inducements to purchase Carter's apparel products containing heat-transferred or "tag less" labels are statements disseminated by Carter's to Plaintiff and the Class or are intended to reach members of the Class. Carter's knew, or in the exercise of reasonable care should have been known, that these statements were untrue.

74. Carter's has engaged in a pattern disseminating untrue advertising and marketing regarding the nature and quality of its apparel products containing heat-transferred or "tag less" labels via, *inter alia*, the Internet, its product packaging, commercial advertisements and other promotional materials, either in or emanating from the State of California.

75. Carter's has prepared and distributed via the Internet, product packaging, commercial advertisements and other promotional materials, statements that falsely advertise the nature and quality of its apparel products containing heat-transferred or "tag less" labels. Consumers, including Plaintiff and the Class, are among the intended targets of such representations.

76. The above acts of Carter's in disseminating said untrue advertising deceived or are likely to deceive Plaintiff and the other members of the Class by affirmatively misrepresenting and failing to disclose material facts regarding the nature and quality its apparel products containing heat-transferred or "tag less" labels, all in violation of the "untrue" prong of California Business and Professions Code §17500.

77.    As a result of the above violations of the "untrue" prong of Business and Professions Code §17500, *et seq.*, Plaintiff and Class members have lost money or property as set forth above, and Carter's has been unjustly enriched at the expense of Plaintiff and the other members of the Class. Plaintiff and the Class, pursuant to Business and Professions Code §17535, are entitled to an order of this Court enjoining such future conduct on the part of Carter's, and such other orders and judgments that may be necessary to provide for complete equitable monetary relief by disgorging Carter's ill-gotten gains and/or restoring to any person in interest some or all of the money paid for Carter's apparel products containing heat-transferred or "tag less" labels as a result of Carter's wrongful conduct, including the monies Carter's saved as a result of its wrongful acts and practices detailed herein.

78.    WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT V - BUSINESS AND PROFESSIONS CODE §17200, *ET SEQ.* – UNLAWFUL BUSINESS ACTS AND PRACTICES

79.    Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

80.    Such acts and practices of Carter's as described above, and each of them, constitute unlawful business acts and practices.

81.    The business practices alleged above are unlawful as violations of the Business and Professions Code §17500, *et seq.*, a breach of an express warranty under California Commercial Code §2313, breach of implied warranty of fitness for

a particular purpose under California Commercial Code §2315, breach of implied warranty of merchantability under California Commercial Code §2314, and violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.* Plaintiff reserves the right to identify additional violations of law as later discovered.

82.   As a result of the above violations of the unlawful prong of Business and Professions Code §17200, *et seq.*, Plaintiff and Class members have lost money or property as set forth above, and Carter's has been unjustly enriched at the expense of Plaintiff and the other members of the Class. Plaintiff and the Class, pursuant to Business and Professions Code §17203, are entitled to an order of this Court enjoining such future conduct on the part of Carter's, and such other orders and judgments that may be necessary to provide for complete equitable monetary relief by disgorging Carter's ill-gotten gains and/or restoring to any person in interest some or all of the money paid for Carter's apparel products containing heat-transferred or "tag less" labels as a result of Carter's wrongful conduct, including the monies Carter's saved as a result of its wrongful acts and practices detailed herein.

83.   WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT VI: BUSINESS AND PROFESSIONS CODE §17200, *ET SEQ.* – UNFAIR BUSINESS ACTS AND PRACTICES

84.   Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

85.   Such acts and practices of Carter's, as described above, and each of

1   them, constitute unfair business acts and practices.

2   86.   Plaintiff, and other members of the Class who purchased apparel

3
4   products containing heat-transferred or "tag less" labels from Carter's, suffered a

5   substantial injury by virtue of buying a product they would not have purchased

6   absent Carter's unfair advertising, labeling and marketing materials or by paying

7
8   more than they would have paid for the unfairly advertised product had the true

9   facts been disclosed or not affirmatively represented.

10   87.   There is no benefit to consumers or competition by falsely advertising

11
12   and misrepresenting the apparel products containing heat-transferred or "tag less"

13   labels.  Indeed, the harm to consumers and competition is substantial.

14   88.   Plaintiff and other members of the Class who purchased the apparel

15
16   products containing heat-transferred or "tag less" labels in question made by

17   Carter's had no way of reasonably knowing that the apparel they bought caused

18
19   serious skin reaction.  Thus, they could not have reasonably avoided the injury each

20   of them suffered because neither the packaging nor the other promotional materials

21   included any statement disclosing the material facts at issue herein, and in fact

22
23   made material misstatements to the contrary.

24   89.   The gravity of the consequences of Carter's conduct as described

25   above outweighs any justification, motive or reason therefore particularly

26
27   considering the available legal alternatives that exist in the marketplace, and is

28   immoral, unethical, unscrupulous, offends established public policy or is

1   substantially injurious to Plaintiff and other members of the Class.

2      90.    As a result of the above violations of the unfair prong of Business and

3

4   Professions Code §17200, *et seq.*, Plaintiff and Class members have lost money or

5   property as set forth above, and Carter's has been unjustly enriched at the expense

6   of Plaintiff and the other members of the Class.  Plaintiff and the Class, pursuant to

7

8   Business and Professions Code §17203, are entitled to an order of this Court

9   enjoining such future conduct on the part of Carter's, and such other orders and

10

11  judgments that may be necessary to provide for complete equitable monetary relief

12  by disgorging Carter's ill-gotten gains and/or restoring to any person in interest

13  some or all of the money paid for Carter's apparel products containing heat-

14

15  transferred or "tag less" labels as a result of Carter's wrongful conduct, including

16  the monies Carter's saved as a result of its wrongful acts and practices detailed

17  herein.

18     91.    WHEREFORE, Plaintiff prays for relief as set forth below.

19

20  **COUNT VII: BUSINESS AND PROFESSIONS CODE §17200, *ET SEQ.* –**
    **FRAUDULENT BUSINESS ACTS AND PRACTICES**

21

22     92.    Plaintiff repeats each and every allegation contained in the paragraphs

23  above and incorporates such allegations by reference herein.

24     93.    Such acts and practices of Carter's as described above, and each of

25

26  them, constitute fraudulent business practices under California Business and

27  Professions Code §17200, *et seq.*

28     94.    As more fully described above, misrepresenting the nature of apparel

products containing heat-transferred or "tag less" labels is likely to deceive reasonable apparel purchasers.  Plaintiff and other members of the Class were or likely to be deceived regarding the nature of apparel products containing heat-transferred or "tag less" labels.

95.   Such fraudulent business acts and practices caused Plaintiff and members of the Class to purchase apparel products containing heat-transferred or "tag less" labels they would not have otherwise purchased had they known that Carter's apparel products containing heat-transferred or "tag less" labels contain chemicals and/or other adulterants that cause serious skin reactions.

96.   As a result of the above violations of the fraudulent prong of Business and Professions Code §17200, *et seq.*, Plaintiff and Class members have lost money or property as set forth above, and Carter's has been unjustly enriched at the expense of Plaintiff and the other members of the Class.  Plaintiff and the Class, pursuant to Business and Professions Code §17203, are entitled to an order of this Court enjoining such future conduct on the part of Carter's, and such other orders and judgments that may be necessary to provide for complete equitable monetary relief by disgorging Carter's ill-gotten gains and/or restoring to any person in interest some or all of the money paid for Carter's apparel products containing heat-transferred or "tag less" labels as a result of Carter's wrongful conduct, including the monies Carter's saved as a result of its wrongful acts and practices detailed herein.

## COUNT VIII:  BREACH OF EXPRESS AND IMPLIED WARRANTIES

97.    Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference therein.

98.    Carter's expressly gives warranties by specific words or actions to Plaintiff and Class members through advertising stressing the excellence and reliability of its products in general and that the apparel products containing heat-transferred or "tag less" labels sold to Plaintiff and the Class were free from material defects.

99.    Furthermore, a warranty that the apparel products containing heat-transferred or "tag less" labels in question were merchantable and of the same quality as those generally acceptable in the trade, would pass without objection in the trade or industry and is implied by law with all Class members' warranties.

100.   The apparel products containing heat-transferred or "tag less" labels made by Carter's, at the time of sale and when delivered to Plaintiff and Class members, did not conform to such warranties in that they were not free from defects in materials or workmanship due to the manner in which such defective apparel was designed and manufactured.

101.   Carter's has failed or refused to replace or repair the defects in the apparel products containing heat-transferred or "tag less" labels free of charge and/or the warranty provided by Carter's has failed in its essential purpose, causing Plaintiff and the Class to suffer injury and damages.

102.   The notice provided by Plaintiff to Carter's satisfied any notice requirement that may have been contained in any applicable warranties.

103.   Carter's has failed or refused to correct this defect in the Class members' apparel products containing heat-transferred or "tag less" labels despite being aware of this defect by having received complaints from Class members that their children had suffered severe skin reactions as a result of wearing the defective apparel, and having had a reasonable opportunity to do so.

104.   The presence of this defect and the resulting failure of the apparel products containing heat-transferred or "tag less" labels that were warranted and represented by Carter's was a substantial factor in causing the damages suffered by Plaintiff and members of the Class.

105.   Carter's actively suppressed these material facts about the defects in its apparel products containing heat-transferred or "tag less" labels. Plaintiff and the Class could not reasonably have had knowledge of facts sufficient to have discovered the cause of such injury or the breach of warranty by Carter's or its cause during any claimed warranty period, as the acts of Carter's that caused such injuries were difficult for the Class members to detect.   Applying any claimed warranty limitations period would therefore be unconscionable and thus unenforceable.

106.   As alleged above, and due to the nature of the alleged defect, Carter's sold Class members apparel products containing heat-transferred or "tag less"

labels that violated its express warranties, were not in merchantable condition, were not fit for their ordinary purpose, would not pass without objection in the trade, and/or did not conform to the affirmations of fact uniformly made by Carter's.

107.   As a result of this breach of warranty, Plaintiff and the Class members have suffered both direct and incidental damages as described herein.

108.   WHEREFORE, Plaintiff, on behalf of herself and the Class, pray for relief as set forth below.

## COUNT IX:  INTENTIONAL MISREPRESENTATION/FRAUD

109.   Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

110.   Defendant has represented to the public, including Plaintiff, by promoting, marketing, advertising, labeling and other means, that the defective apparel has characteristics, and qualities that it does not have, specifically, that the defective apparel is, *inter alia,* "snuggly, cuddly, day to day essential that make life easier for baby and mom," "super comfy," "oh-so-comfy for baby," "comfy" and "soft & comfortable."

111.   Defendant's representations were untrue in that the defective apparel is not, *inter alia,* "snuggly, cuddly, day to day essential that make life easier for baby and mom," "super comfy," "oh-so-comfy for baby," "comfy" and "soft & comfortable" in that it contains skin irritating chemicals and other adulterants.

112.   At the time Defendant made the representations herein alleged,

Defendant knew the representations were false.

113.   Defendant made the misrepresentations herein alleged with the intention of depriving Plaintiff and Class members of property or otherwise causing injury, and has committed fraud.

114.   As a proximate result of these acts, Plaintiff and other consumers were induced to spend an amount to be determined at trial on the defective apparel manufactured, distributed, and sold by Defendant, and thereby lost money by purchasing the defective apparel that was not what it was represented to be and which they would not have purchased but for the misrepresentations. Plaintiff and other consumers in purchasing and using the defective apparel as herein alleged, did rely on Defendant's above representations, all to their damage as hereinabove alleged.

115.   Accordingly, Plaintiff and the Plaintiff Class are entitled to judgment against the Defendant for their actual damages in the form of restitution, attorneys' fees and costs of litigation.

## COUNT X: NEGLIGENT MISREPRESENTATON

116.   Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

117.   Defendant has represented to the public, including Plaintiff, by promoting, marketing, advertising, labeling and other means, that the defective apparel has characteristics and qualities that it does not have, specifically, that the

defective products are, *inter alia,* "snuggly, cuddly, day to day essential that make life easier for baby and mom," "super comfy," "oh-so-comfy for baby," "comfy" and "soft & comfortable."

118.  Defendant's representations were false in that the defective apparel is not, *inter alia,* "snuggly, cuddly, day to day essential that make life easier for baby and mom," "super comfy," "oh-so-comfy for baby," "comfy" and "soft & comfortable," but instead, contain skin irritating chemicals and/or other adulterants.

119.  Defendant made the false representations herein alleged with the intention of guiding the consuming public to purchase Defendant's defective apparel.

120.  Plaintiff and others believed and relied on Defendant's packaging, promotion, labeling, marketing and advertising, and, in justifiable reliance thereon, purchased the defective apparel.

121.  At the time Defendant made the misrepresentations herein alleged, Defendant had no reasonable grounds for believing the representations to be true.

122.  As a proximate result of Defendant's negligent misrepresentations, Plaintiff and other consumers were induced to spend an amount to be determined at trial on the defective apparel manufactured, distributed, and sold by Defendant, and thereby lost money by purchasing apparel that was not what it was represented to be, and which they would not have purchased but for the misrepresentations.

123.  Accordingly, Plaintiff and the Plaintiff Class are entitled to judgment

1  against the Defendant for their actual damages in the form of restitution, attorneys'

2  fees and costs of litigation.

3                    **COUNT XI: UNJUST ENRICHMENT**

4  124.  Plaintiff repeats and realleges all preceding paragraphs, as if fully set

5

6  forth herein.

7  125.  Defendant has benefited from its unlawful acts by receiving excessive

8

9  revenue derived from the sales of the defective apparel represented to be, *inter alia,*

10  "snuggly, cuddly, day to day essential that make life easier for baby and mom,"

11  "super comfy," "oh-so-comfy for baby," "comfy" and "soft & comfortable"

12

13  Defendant appreciated and/or knew the benefit of the receipt of such excessive

14  revenue. This excessive revenue has been received by Defendant at the expense of

15  Plaintiff and other members of the Class, under circumstances in which it would be

16

17  inequitable for Defendant to be permitted to retain the benefit.

18  126.  Plaintiff and other members of the Class are entitled to the

19  establishment of a constructive trust consisting of the benefit conferred upon

20

21  Defendant in the form of their excessive revenue derived from the sale of the

22  defective apparel from which Plaintiff and other Class members may make claims

23

    on a *pro rata* basis for restitution.

24

25              **COUNT XII: NEGLIGENCE AND NEGLIGENCE *PER SE***

26  127.  Plaintiff repeats and realleges all preceding paragraphs, as if fully set

27  forth herein.

28

    128.  Defendant had a duty to exercise reasonable care in manufacturing,

marketing, supplying, promoting, packaging, selling, and/or distributing the defective apparel into the stream of commerce, including a duty to assure that the defective apparel would work as intended, marketed, promoted, and/or advertised.

129. Defendant failed to exercise ordinary care in the manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control and/or distribution of the defective apparel into interstate commerce in that Defendant knew or should have known that its apparel products containing heat-transferred or "tag less" labels were defective and did not function as intended.

130. The negligence of the Defendant, its agents, servants, and/or employees, included, but was not limited to, the following acts and/or omissions:

a. manufacturing, producing, promoting, formulating, creating and/or designing the defective apparel without thoroughly testing them;

b. manufacturing, producing, promoting, formulating, creating and/or designing the defective apparel without adequately testing them;

c. not conducting sufficient testing programs to determine whether or not the aforesaid defective apparel was safe for use in that Defendant knew or should have known that the defective apparel was unsafe and unfit for use by reason of the dangers to its users and/or because of the negligent manufacturing of the defective apparel;

d. selling the defective apparel without conducting proper and sufficient tests to determine the dangers to its users;

e. negligently failing to adequately and correctly warn the Plaintiff and Plaintiff Class Members and/or the public of the dangers and negligent manufacture of the defective apparel;

f. negligently failing to recall or otherwise notify users at the earliest date that it became known that the defective apparel was, in fact, defective;

g. failing to test the defective apparel and/or failing to adequately, sufficiently and properly test the defective apparel;

h. negligently advertising and recommending the use of the aforesaid defective apparel without sufficient knowledge as to its manufacturing defect and dangerous propensities;

i. negligently representing that the defective apparel was safe for its intended purpose when, in fact, its safety is questionable;

j. negligently manufacturing, designing, and producing the defective clothing in a manner which was dangerous to its users;

k. concealing information concerning reports of adverse effects from the Plaintiff and Plaintiff Class Members in knowing that the defective apparel was unsafe, dangerous and non-conforming with accepted industry standards; and

l. improperly concealing and/or misrepresenting information from the Plaintiff and Plaintiff Class Members, and the public, concerning the risks and dangers of the defective clothing and/or the manufacturing defect.

131. Upon information and belief, despite the fact that Defendant knew or

should have known of defective nature of the apparel, Defendant continued to market, manufacture, distribute and/or sell the defective apparel to consumers, including the Plaintiff and Plaintiff Class Members.

132.   Defendant knew or should have known that consumers such as Plaintiff and Plaintiff Class Members would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care, as well as Defendant's negligent manufacturing process, as set forth above.

133.   Defendant's actions and/or inactions, as set forth herein, by virtue of violating statutes, ordinances and/or rules and/or regulations, constitute negligence *per se*.

134.   Defendant knew or should have known that consumers such as the Plaintiff would foreseeably suffer injury, as a result of Defendant's failure to exercise ordinary care, as well as Defendant's negligent manufacturing process, as set forth above.

135.   Defendant's negligence was the proximate cause of Plaintiff's and Plaintiff Class Members' loss which they suffered and will continue to suffer.

136.   Therefore, Plaintiff and the other members of the Class are entitled to actual, incidental, and consequential damages, as a result of Defendant's negligence.

## COUNT XIII: SUPPRESSION

137.   Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference therein.

138.   Carter's suppressed from Plaintiff and Class members that its defective apparel caused serious skin reactions.

139.   Carter's engaged in a pattern or practice of fraudulent suppression that included the fraud practiced on Plaintiff and the Class members.

140.   Plaintiff and the Class members relied on and were induced to act by Carter's misrepresentations and concealment.   Plaintiff and the Class members would not have purchased the defective apparel if they had been told that it caused serious skin reactions.

141.   As a result of Carter's suppression of material facts, Plaintiff and Class members have been damaged.

142.   WHEREFORE, Plaintiff, on behalf of themselves and the Class, prays for relief as set forth below.

## COUNT XIV: VIOLATION OF MAGNUSON-MOSS ACT
### (15 U.S.C. §2301 et seq.)

143.   Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

144.   Plaintiff and the Class are consumers as defined in 15 U.S.C. §2301(3).

145.   Defendant is a supplier and warrantor as defined in 15 U.S.C. §2301 (4)(5).

146.   The defective apparel is a consumer product as defined in 15 U.S.C. §2301(6).

147.   By reason of Carter's breach of its implied warranties and express written warranties stating that the defective apparel was free from material defects, and that Carter's would repair or replace any such defects, Defendant has violated the statutory rights due the Plaintiff and the Class pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 et seq., thereby damaging Plaintiff and the Class.

**COUNT XV:  INJUNCTIVE AND DECLARATORY RELIEF**

148.   Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

149.   As set forth above, through the improper practices described above, Defendant has misrepresented its defective apparel as, *inter alia,* "snuggly, cuddly, day to day essential that make life easier for baby and mom," "super comfy," "oh-so-comfy for baby," "comfy" and "soft & comfortable" to Plaintiff and other members of the Class.

150.   Defendant's practices described herein are unlawful and against public policy and, therefore, Defendant should be prohibited and enjoined from engaging in these practices in the future.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims so triable as a matter of right.

**PRAYER FOR RELIEF**

As a result of the above allegations, Plaintiff requests the following relief:

1.   An Order certifying that the action be maintained as a class action;

2.      For a judgment of the Court to restore, by way of restitution, refund or reimbursement, to any person in interest any money paid to and/or acquired by Carter's as a result of its deceptive or misleading advertising and/or unfair, unlawful or fraudulent business acts and practices, and ensuring all excessive and ill-gotten monies obtained by Carter's as a result thereof are disgorged by Carter's with interest thereon to the persons affected by such acts and practices;

3.      For actual, incidental, consequential and/or statutory damages as provided for by law, or other monies expended by Plaintiff and members of the Class;

4.      For permanent injunctive relief prohibiting, restraining and enjoining Defendant from engaging in the conduct complained of herein, including, *inter alia,* manufacturing, promoting, marketing, advertising, selling and/or distributing the defective apparel in the manner described herein.

5.      An Order directing Carter's to immediately take all reasonable steps to ensure the defective clothing is removed from the stream of commerce, including, but not limited to, directing, encouraging and facilitating the removal of the defective clothing from any and all retail outlets;

6.      An Order directing Carter's to issue corrective advertising that includes a public apology;

7.      An Order directing Carter's to inform and educate any and all retail sellers of the defective clothing of the nature of the defect, as well as the necessary

1  procedures that must take place if/when a customer seeks to return the defective

2  clothing;

3

4      8.      For an award of attorneys' fees pursuant to, *inter alia*, Code of Civil

5  Procedure §1021.5 and the Magnuson-Moss Warranty Act;

6

7      9.      For costs of suit herein incurred;

8

9      10.     Pre and post-judgment interest; and/or

10

11     11.     For such other and further relief including compensatory and punitive

   damages as this court deems appropriate or which is allowed for in law or equity.

12

13  DATED:  November 5, 2008          By: _____
                                              Robert A. Jigarjian

14

15                                        128 Tunstead Avenue
                                          San Anselmo, California  94960

16

17                                        WHATLEY DRAKE & KALLAS, LLC
                                          Joe R. Whatley, Jr., Esq.
18                                        Edith M. Kallas, Esq.
                                          1540 Broadway, 37th Floor
19                                        New York, NY 10036
                                          Tel: (212) 447-7070
20                                        FAX: (212) 447-7077

21                                        Thomas J. Butler, Esq.
                                          2001 Park Place North, Suite 1000
22                                        Birmingham, Alabama 35203
                                          Tel: (205) 328-9576
23                                        FAX: (205) 328-9669

24                                        EMERSON POYNTER LLP
                                          John G. Emerson, Esq.
25                                        830 Apollo Lane
                                          Houston, Texas  77058-2610
26                                        Tel: (281) 488-8854
                                          FAX: (281) 488-8867

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Scott E. Poynter, Esq.
Christopher D. Jennings, Esq.
500 President Clinton Ave., Ste. 305
Little Rock, Arkansas  72201
Tel:  (501) 907-2555
FAX:  (501) 907-2556

BRANSTETTER STRANCH &
    JENNINGS PLLC
James G. Stranch III, Esq.
J. Gerard Stranch, IV, Esq.
227 Second Avenue North
Fourth Floor
Nashville, TN  37201-1631
Tel: (615) 254-8801
FAX:  (615) 250-3937